The STATE of Ohio, Appellee,

v.

LEE, Appellant.

[Cite as *State v. Lee* (1994), 97 Ohio App.3d 197.]

Court of Appeals of Ohio,
Ashtabula County.

No. 93–A–1808.

Decided Sept. 19, 1994.

*Gregory J. Brown,* Ashtabula County Prosecuting Attorney, for appellee.
*Jon T. Field,* for appellant.

NADER, Judge.

This is an appeal from the judgment of the Ashtabula County Court of Common Pleas entered upon the jury verdict finding appellant, David W. Lee, guilty of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1). On June 24, 1993, appellant was sentenced to a definite term of two years' incarceration.

It is uncontested that the following facts were presented at trial. On January 9, 1993, an off-duty auxiliary patrolman with the city of Ashtabula, Trevar Trask, was driving along West 32nd Street in Ashtabula when two males attracted his

attention. These individuals offered to sell him drugs. Trask proceeded to the police station to report this event. As a consequence of this report, Trask was wired with a body microphone and was given an identified $20 bill and was instructed to return to the area in his car to attempt a purchase. Several officers were sent to the area to tape-record any sale and to effectuate the arrest. Trask was approached by another individual, but this individual required more than $20 for a sale. Trask returned to the police station and obtained two additional $20 bills.

Trask returned to the same location and pulled his car to the side of the road. It was shortly thereafter that appellant and another person first approached Trask's automobile. Appellant knocked on the window and started a conversation. Trask testified to the following on direct examination:

"Q. Now, during this time frame that you had conversation with the defendant, can you indicate to the ladies and gentlemen of the jury basically what he said to you?

"A. He asked me what I needed.

"Q. Did you respond?

"A. I asked him to give me fifty dollars worth.

"Q. Was there further conversation between you and Mr. Lee?

"A. He stated he had two rocks on him and he'd give them to me for fifty dollars.

"Q. And when he used the work [sic] 'rocks,' were you familiar with that particular terminology?

"A. Yes, I was.

"Q. What did that term mean to you at that time?

"A. Crack cocaine.

"Q. Did there ever come a time you continued this conversation?

"A. I asked him to get into my vehicle and he refused.

"Q. After he refused to get into your vehicle, what took place?

"A. I asked him if the price was fifty dollars. He stated he'd give it to me for forty.

"Q. That would be forty dollars?

"A. Correct.

"Q. Are you familiar with the price of rock cocaine in the Ashtabula City area?

"A.  Yes, I am.

"Q.  And how are you familiar with that?

"A.  Just dealing with it all the time.

"Q.  What is generally the price of rock cocaine?

"MR. PERDUE: Objection.

"THE COURT: Overruled.

"He can answer that.

"A.  Usually they're sold in ten to twenty dollar pieces.

"Q.  Did you have more conversation with Mr. Lee at that time?

"A.  Yes, I did.

"Q.  What was that conversation?

"A.  He gave me the two rocks and I handed him the money."

Analysis of the substance transferred to Trask showed that the "rocks" contained no controlled substances.

Appellant filed a timely appeal in which he designates a single assignment of error:

"The Ashtabula County Court of Common Pleas erred to the prejudice of David W. Lee where it accepted the jury's verdict of guilty and entered a judgment of conviction thereon when the verdict was against the manifest weight of the evidence."

R.C. 2925.03(A)(1) reads:

"(A) No person shall knowingly do any of the following:

"(1) Sell or offer to sell a controlled substance[.]"

Appellant argues in his brief that, because there was no controlled substance involved in the exchange between him and Trask, he cannot be convicted of offering to sell a controlled substance under R.C. 2925.03(A)(1), but could be indicted and convicted only under R.C. 2925.37(B), which states:

"No person shall knowingly make, sell, offer to sell, or deliver any substance that he knows is a counterfeit controlled substance."

Appellant's contention is that a necessary element of the offense of offering to sell a controlled substance under R.C. 2925.03(A)(1) is that the substance offered actually be a controlled substance. Thus, appellant challenges the sufficiency rather than the weight of the evidence. The test for the sufficiency of the evidence was set forth in *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

As no controlled substance was involved in the exchange between Trask and appellant, the issue presented by this appeal is whether a person who offers to sell what purports to be a controlled substance, but in fact is not, may be convicted of aggravated trafficking in violation of R.C. 2925.03(A)(1).

The Supreme Court of Ohio held in *State v. Scott* (1982), 69 Ohio St.2d 439, 23 O.O.3d 390, 432 N.E.2d 798, syllabus:

"A person can 'offer to sell a controlled substance' in violation of R.C. 2925.03(A)(1) without transferring a controlled substance to the buyer."

In *State v. Patterson* (1982), 69 Ohio St.2d 445, at 447, 23 O.O.3d 394, at 395, 432 N.E.2d 802, at 803, the court explained that the culpable state of "knowing" relates to the act of offering. Thus, one who knowingly offers what purports to be a controlled substance has committed the offense of aggravated trafficking.

Appellant contends, however, that *Scott* and *Patterson* are no longer good law in light of the subsequent passage of R.C. 2925.37(B). In *Patterson*, 69 Ohio St.2d at 451, 23 O.O.3d at 397–398, 432 N.E.2d at 805–806, Justice Holmes stated in his concurrence:

"Where it is shown that the state has conceded after testing the questioned substance that it has been found not to be a controlled substance, as a matter of law, the record will not support a finding beyond a reasonable doubt that there has been a knowing offer to sell a controlled substance contrary to R.C. 2925.03(A)(1), (5) or (7), unless the state proves beyond a reasonable doubt that the defendant thought the subject of such offer was a controlled substance.

"The statute involved here must be interpreted reasonably to have been enacted to control the trafficking in drugs. It was not intended as a consumer protection law for those who might be defrauded in the attempted purchase of a controlled substance. If the General Assembly had intended to provide for the separate offense of offering to sell a substance falsely represented to be a controlled substance, such could have been provided for. However, it was not so provided.

"Further, the General Assembly surely could not have intended identical penalties for fraudulent drug sales as for actual drug sales in that there are penalties differing in the severity depending upon the nature and the amount of the substance sold or offered for sale. * * *" (Footnotes omitted.)

The *per curiam* opinion in *Patterson*, while rejecting the requirement that the state prove that the defendant thought the substance was a controlled one, also observed the state legislature had not provided for a "fraudulent transfer"

defense in a prosecution under R.C. 2925.03(A), and concluded that it would be improper to create one judicially. *Id.* at 447, 23 O.O.3d at 395, 432 N.E.2d at 803–804. Appellant cogently argues that R.C. 2925.37(B) was enacted in response to the decisions in *Scott* and *Patterson,* and in recognition of those portions of the *per curiam* and concurring opinions in *Patterson* noted above.

Despite the foregoing, the state correctly notes that the Supreme Court of Ohio applied the interpretation of R.C. 2925.03(A)(1) found in *Scott* and *Patterson* in the case of *State v. Mughni* (1987), 33 Ohio St.3d 65, 514 N.E.2d 870, which was decided after the enactment of R.C. 2925.37(B). In *Mughni,* the court held in the syllabus:

"The offenses of knowingly selling or offering to sell a controlled substance, as proscribed by R.C. 2925.03(A)(1), and knowingly selling or offering to sell a counterfeit controlled substance, in violation of R.C. 2925.37(B), are not allied offenses of similar import. (R.C. 2941.25, applied.)"

The court stated in the course of the opinion:

"When appellant knowingly offered to sell Percodan, a controlled substance, his offense was complete under R.C. 2925.03(A)(1). *State v. Scott* (1982), 69 Ohio St.2d 439, 23 O.O.3d 390, 432 N.E.2d 798. There need be no additional proof that appellant knew that the substance he was offering was not Percodan or that it was actually a counterfeit controlled substance. Proof of such knowledge and of the counterfeit character of the substance offered *is* necessary for a conviction under R.C. 2925.37(B). Thus, commission of the first offense will not necessarily result in commission of the second offense. The offenses are, therefore, not allied, and appellant may be convicted of both." (Emphasis *sic.*) *Id.* at 67–68, 514 N.E.2d at 872–873.

While there may be a sound basis for questioning the reasoning and conclusion in *Mughni,* the decision is clearly dispositive of the issue presented by this appeal. See *State v. Byrd* (1993), 86 Ohio App.3d 679, 621 N.E.2d 781; *State v. Moreland* (Feb. 14, 1991), Montgomery App. No. CA–12278, unreported, 1991 WL 19357.

Pursuant to *Mughni,* the state was only required to prove that appellant knowingly offered to sell cocaine to Trask; the state was not required to prove that the substance was in fact cocaine or appellant's knowledge of its actual identity. *Moreland* at 7.

There was substantial evidence that all the elements of the offense were proven beyond a reasonable doubt. Accordingly, appellant's assignment of error is without merit, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and JOSEPH E. MAHONEY, J., concur.