[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the judgment of the Erie County Court of Common Pleas which, after a jury trial, found defendant-appellant, Laron Gillard, guilty of aggravated robbery, in violation of R.C. 2911.01(A)(3), and felonious assault, in violation of R.C. 2903.11(A)(2).
On September 16, 1997, appellant's jury trial commenced. During trial, the state presented the following evidence. David Smith, the victim in this case, testified that on March 21, 1997, he drove to Sandusky, Ohio, in order to visit relatives and friends, and potentially purchase new car stereo speakers or new wheel rims. That evening, Smith went with a friend to a party. Appellant arrived at the party with a few friends. Smith and appellant did not speak, and Smith left approximately five minutes after appellant's arrival.
Once Smith left the party he went to Torrie Hogan's apartment. Hogan and a few other people were there. They played cards for a few hours and around 2:00 a.m. or 3:00 a.m., Smith fell asleep on a chair in Hogan's living room.
Smith awoke at approximately 8:00 a.m. Three men were standing in the living room who were later identified as appellant, Marcus Bonner and Tony Bonner. Appellant asked for change, Smith reached into his pocket and appellant struck him in the face with his closed fist. Smith fell back into the chair and appellant removed approximately $475 from his pockets and his identification and car keys. Smith claims that while appellant was rifling through his pockets, he kept whispering that Hogan had nothing to do with the robbery. The men promptly left the apartment.
Smith stood up and walked over to the window. He testified that he observed Tony Bonner removing stereo speakers from his car and placing them in a nearby car. Smith also observed appellant and Marcus Bonner in the other car. Smith stated that he continually requested that Hogan call the police, but that she did not call until after she observed the men driving away. Smith testified that he felt he had been "set up." Torrie Hogan testified that when she first spoke with police she did not identify appellant because she was fearful of retaliation. She later cooperated because children's services was threatening to take custody of her children. Hogan also testified that she had recently been convicted of attempted complicity to possession of cocaine pursuant to a plea agreement. Hogan stated that her testimony was not in exchange for the reduced sentence.
Hogan testified that appellant hit Smith and then went through his pockets. She stated that appellant had what looked like a lot of money in his hand.
Detective John Paseka testified that during his interrogation of appellant, he admitted hitting Smith. However, appellant stated that Smith had jumped up and approached him first. Appellant told Paseka that Smith had been robbed of LSD at the party and believed that appellant was the perpetrator. When Paseka questioned appellant about the money, he stated that after he hit Smith, he found it laying on the floor and said something to the effect of "finders keepers losers weepers." Appellant denied going through Smith's pockets or taking his car keys.
During appellant's case, Marcus Bonner testified that Smith was robbed at the party the night before, prior to his and appellant's arrival. Shortly after their arrival, Smith left the party.
Bonner stated that he slept at appellant's home and drove him over to Hogan's apartment around 8:00 a.m. He testified that appellant and Hogan allegedly had a child together, and appellant was going to see him.
Appellant entered the apartment first, followed by Bonner and a man who had been standing on the stairwell. Bonner denied knowing the individual. Bonner testified that Smith jumped up in front of appellant and yelled "you the guy who robbed me," and appellant hit him.
Prior to the close of the evidence, a discussion was had out of the hearing of the jury regarding appellant's decision not to testify regarding his defense of self-defense. The trial court explained that the jury may wonder why he did not testify and explain his side of the story. Appellant stated that he was satisfied with his counsel and did not want to be made to look like a "liar" by the prosecutor. Trial counsel added that they had gone over the case in detail and he believed that his client's decision not to take the stand was appropriate.
During jury instructions, the trial judge instructed the jury on the affirmative defense of self-defense. The trial court also explained that a defendant has a constitutional right not to testify and that a decision not to testify may not be considered.
The jury returned guilty verdicts as to both counts in the indictment. Appellant timely filed a notice of appeal, and requested that the court combine a probation violation charge when considering the appeal.
On appeal, appellant raises the following assignment of error:
 "DEFENDANT/APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO MANY ERRORS BY TRIAL COUNSEL FOR DEFENDANT/APPELLANT:
 "1. FAILED TO FILE A MOTION PURSUANT TO CRIM.R. 16(B)(1)(f) TO DETERMINE THE EXTENT OF THE STATE'S IMMUNITY OR PLEA AGREEMENT WITH ACCOMPLICE AND DAVID SMITH.
 "2. FAILED TO FILE A MOTION TO SUPPRESS THE TESTIMONY OF TORRIE HOGAN AND DAVID SMITH BASED UPON THE STATE'S VIOLATION OF DR7-109(C).
 "3. FAILED TO REQUEST A PROPER JURY INSTRUCTION REGARDING THE TESTIMONY OF ACCOMPLICE.
 "4. RAISED THE AFFIRMATIVE DEFENSE OF SELF DEFENSE TO THE JURY AND THEN FAILED TO HAVE DEFENDANT/APPELLANT TESTIFY AS TO THAT DEFENSE.
 "5. FAILED TO OBJECT TO IMPROPER AND MISLEADING STATEMENTS MADE BY THE JUDGE DURING THE TESTIMONY OF DEFENDANT/APPELLANT'S SOLE WITNESS.
 "6. FAILED TO OBJECT TO THE COURT'S INSTRUCTION TO THE JURY REGARDING DEFENDANT/APPELLANT'S FAILURE TO TAKE THE WITNESS STAND AFTER THE COURT INFORMED DEFENDANT/APPELLANT THAT THE JURORS WOULD QUESTION DEFENDANT/APPELLANT'S FAILURE TO TAKE THE WITNESS STAND."
Legal representation is constitutionally ineffective, and a basis for reversal or vacation of a conviction, when counsel's performance is deficient and results in prejudice to the accused. Strickland v. Washington (1984), 466 U.S. 668. In order to prove ineffective assistance of counsel, a defendant must show (1) that his counsel's performance fell below an objective standard of reasonable representation in some particular respect or respects and (2) that he was so prejudiced by the defect or defects that there exists a reasonable probability that, but for counsel's errors, the result of the trial would have been different. State v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, following Strickland.
Appellant first alleges that trial counsel's performance was deficient because he failed to file a motion pursuant to Crim.R. 16(B)(1)(f), requesting the trial court to order the state to disclose all favorable or otherwise material evidence. Appellant points specifically to state witnesses Torrie Hogan and David Smith, and any alleged deals that may have been given in exchange for their testimony. Appellee responds that no plea agreements had been made and, thus, no prejudice resulted. In appellant's reply, he argues that he is concerned not only about plea agreements, but agreements not to indict as well.
After careful review of the record, we find it devoid of evidence of any "deals" with the witnesses not to indict in exchange for their testimony. The only evidence of Hogan's alleged involvement comes from Smith's testimony that he believed he had been set up. Smith was not sure whether Hogan knew that he had a large sum of money, but felt it was possible.
Further, assuming that appellant's counsel was derelict in failing to request discovery, appellant has failed to show that the lack of investigation actually had an adverse effect on the defense. Strickland, supra at 693. During trial, Hogan testified that she only told the truth in order to prevent children's services from taking her children and that she had a prior criminal record. The jury was also told that Smith had been drinking and driving while under the age of twenty-one and there was testimony that he was selling illegal narcotics. Based on the foregoing, we find that even if appellant's trial counsel had filed a Crim.R. 16(B)(1)(f) motion, no reasonable probability exists that the outcome of the trial would have been different. Therefore, appellant's claim of ineffective assistance of counsel in this regard must fail.
Appellant next claims that his counsel was ineffective because he failed to file a motion to suppress the testimony of Hogan and Smith based upon the state's violation of DR 7-109(C). DR 7-109(C) provides in relevant part:
 "A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case."
Again, there is no evidence that the state offered Hogan any payment or compensation for her testimony. The fact that she agreed to cooperate because children's services had threatened to remove her children was independent of the state's investigation. There is no evidence that the state contacted children services and requested they make such a threat. Thus, appellant's assignment of error as to this issue, is not well-taken.
Appellant also argues that his counsel was ineffective because he failed to request, in relation to Hogan's testimony, a jury instruction regarding accomplice testimony. R.C. 2923.03(D) provides:
 "D) If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "`The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 "`It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.'"
In State v. Redd (Mar. 29, 1996), Lucas App. No. L-94-330, unreported, this court determined that where a witness had not been indicted for the crime of complicity, a trial court is not required to instruct a jury pursuant to R.C. 2923.03(D). In reaching our decision, this court followed the Supreme Court of Ohio's holding that "at the very least, an `accomplice' must be a person indicted for the crime of complicity." State v. Wickline
(1990), 50 Ohio St.3d 114, 118, certiorari denied (1990),498 U.S. 908.
In the instant case, we find that the trial court was not required to instruct the jury regarding accomplice testimony because Hogan had not been indicted for complicity. Accordingly, appellant was not prejudiced by trial counsel's failure to request such an instruction.
Appellant next alleges that trial counsel was ineffective because of his decision to raise the affirmative defense of self-defense and not have appellant testify.
It is well established that trial counsel's decision as to which witnesses will testify at trial is considered trial strategy and tactics, and will not constitute ineffective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45,49. Upon consideration of the evidence presented at trial, appellant has failed to establish that there is a reasonable probability that the outcome of his trial would have been different had he testified on his own behalf. Thus, we find that appellant has failed to establish that he received ineffective assistance of counsel in this regard.
Appellant next states that he was prejudiced by statements made by the trial court and, likewise, by trial counsel's failure to object to such statements. During the cross-examination of the sole defense witness, Marcus Bonner, and after a bench conference, the trial court stated: "Ladies and gentlemen, you're instructed that you are hearing the evidence right now and you will make your own decisions as to what the evidence shows." Appellant contends that the trial court, in effect, had "just thrown out all of the direct examination of Appellant's sole trial witness * * *."
After reviewing the context in which the statement was made, we are unpersuaded by appellant's argument. The trial court's statement did not dismiss the direct examination of Bonner, it merely restated the jury's role during the entire course of testimony. Thus, appellant's assigned error fails in this regard.
In his final alleged error by trial counsel, appellant claims that he should have objected to the trial court's jury instruction regarding appellant's failure to take the stand. Appellant feels that trial counsel should have objected because the trial court itself did not believe the instruction would cure any prejudice which resulted. The following instruction was given:
 "Now, it is not necessary that the Defendant take the witness stand in his own defense. He has a constitutional right not to testify. The fact that the Defendant did not testify must not be considered for any purpose."
While appellant suggests that the instruction was somehow improper, he does not propose an appropriate alternative. The trial court properly followed the standard instruction format for a defendant who does not testify on his own behalf. See 4 Ohio Jury Instructions (1997) 42, Section 405.21. Moreover, the trial court in no way suggested to the jury that it felt that appellant should have testified. Thus, since trial counsel had no valid cause to object, his failure to do so does not constitute ineffective assistance of counsel.
Based on the foregoing, appellant's assignment of error is not well-taken.
In addition to appellant's assigned error, during the parties' oral argument before this court, a question arose as to whether the offenses of aggravated robbery and felonious assault are allied offenses of similar import. This court, sua sponte, requested that the parties submit written briefs, raising an additional assignment of error.
The issue of allied offenses was not raised in the trial court and, therefore, our review shall proceed under the plain error analysis. See Crim.R. 52(B); State v. Fields (1994),97 Ohio App.3d 337, 344. Plain error is an obvious error or defect in the trial court proceedings, affecting substantial rights, which, "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
Regarding allied offenses of similar import, R.C. 2941.25(A) provides:
 "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."
Until recently, Newark v. Vazirani (1990), 48 Ohio St.3d 81, provided the test to be used when analyzing claims involving allied offenses of similar import. The test required an analysis of the specific facts of the case. However, in State v. Rance
(1999), 85 Ohio St.3d 632, the Supreme Court of Ohio, overrulingNewark, set forth the following test for determining whether certain offenses are allied offenses of similar import:
 "If the elements of the crimes "`correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import.'" [State v. Jones (1997), 78 Ohio St.3d 12,] 13, 676 N.E.2d at 81, quoting Blakenship, 38 Ohio St.3d at 117, 526 N.E.2d 816, 817. If the elements do not so correspond, the offenses are of 6 dissimilar import and the court's inquiry ends — the multiple convictions are permitted. R.C. 2941.25(B). See, also, State v. Mughni (1987), 33 Ohio St.3d 65, 68, 514 N.E.2d 870, 873."
When applying this test, the court should contrast the statutory elements in the abstract, rather than considering the particular facts of the case. Id.
Examining the facts in this case we note that the offenses charged did arise from the same course of conduct; however, keeping in mind the standard set forth in Rance, we must now determine whether the offenses of which appellant was convicted may be considered allied offenses of similar import. In the instant case, appellant was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(3), and felonious assault, in violation of R.C. 2903.11(A)(1). The elements of aggravated robbery include in relevant part:
 "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall to any of the following:
"* * *
 (3) Inflict, or attempt to inflict, serious physical harm on another."
R.C. 2903.11(A)(1) defines the offense of felonious assault:
"(A) No person shall knowingly:
 "(1) Cause serious physical harm to another or to another's unborn; * * *."
The elements of the above offenses are certainly similar; however, aggravated robbery can be committed without the commission of felonious assault and vice versa. In order to commit aggravated robbery, one need only act recklessly in inflicting or attemptingto inflict serious physical harm. Conversely, in order to commit felonious assault, one must act knowingly and actually causeserious physical harm to another. Accordingly, the offenses are not allied offenses of similar import, and appellant could properly be convicted of each offense. Appellant's second assignment of error is not well-taken.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the decision of the Erie County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 __________________________________________ MELVIN L. RESNICK, J., JUDGE.
 __________________________________________ RICHARD W. KNEPPER, P.J., JUDGE.
 __________________________________________ MARK L. PIETRYKOWSKI, J., JUDGE CONCUR.